**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 18-76-DLB**

**WILLIAM B. WHITE**                                                                                         **PLAINTIFF**

**v.**                      **MEMORANDUM OPINION & ORDER**

**ANDREW SAUL,**[1] **Commissioner
of the Social Security Administration**                                     **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying Plaintiff's eligibility for Social Security disability insurance benefits. (Doc. # 1). The Commissioner's determination was partially favorable, finding that Plaintiff became disabled on April 26, 2017, but was not disabled prior to that date. Plaintiff's appeal therefore "involves the disability onset date only," as Plaintiff argues that the Commissioner's determination "is incorrect in finding that Mr. White was not disabled prior to [April 26, 2017]." (Doc. # 14 at 1). The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will **deny** Plaintiff's dispositive motion (Doc. # 14), **grant** Defendant's dispositive motion (Doc. # 18), and **affirm** the Commissioner's decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On January 5, 2015, Plaintiff William B. White filed an application for a period of

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, during the pendency of the parties' cross-motions for summary judgment. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

disability and disability insurance benefits, alleging disability beginning on May 30, 2014. (Doc. # 1 at 2; Tr. 236). White was forty-seven years old at the time of filing; he alleged that he was unable to work due to, *inter alia*, heart problems; multiple orthopedic problems; lumbar radiculopathy problems; inability to ambulate effectively; arthritis, degenerative problems, and arthralgia; bilateral knee problems; fibromyalgia; gout problems; dizziness, vertigo, and syncope problems; peripheral neuropathy of his lower and upper extremities; edema problems of the lower extremities including his feet and ankles; morbid obesity problems; and psychological problems including depression and anxiety. (Tr. 99, 123, 240; Doc. # 14-1 at 3). His claims were denied initially and again upon reconsideration. (Tr. 86-98, 99-115).

At Plaintiff's request, an administrative hearing was conducted before Administrative Law Judge (ALJ) Thuy-Anh T. Nguyen on May 16, 2017. (Tr. 12, 32-85, 130). On September 29, 2017, ALJ Nguyen issued a partially-favorable decision, finding that Plaintiff met the insured status requirements of the Social Security Act. (Tr. 8-25). However, ALJ Nguyen found that Plaintiff "was not disabled prior to April 26, 2017, but became disabled on that date and has continued to be disabled through the date of this decision." (Tr. 12). The ALJ's decision became the final decision of the Commissioner on March 20, 2018, when the Appeals Council denied Plaintiff's request for review. 42 U.S.C. § 405(g); (Tr. 1-5).

Plaintiff filed this action on May 10, 2018, arguing that the ALJ erred as a matter of law by finding that Plaintiff's disability onset date was April 26, 2017, and not Plaintiff's claimed onset date of May 30, 2014. (Doc. # 1 at 6). This matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 14 and 18).

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.*

Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

### B. The ALJ's Determination

To determine disability, the ALJ conducts a five-step analysis. Step One considers whether the claimant has engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether

the claimant can still perform his or her past relevant work; and Step Five, whether a significant number of jobs exist in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant on Steps One through Four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [the claimant's] residual functional capacity." *Id.* The ALJ's determination becomes the final decision of the Commissioner if the Appeals Council denies review, as it did here. *See Thacker v. Comm'r of Soc. Sec.*, No. 16-CV-114, 2017 WL 653546, at *1 (E.D. Ky. Feb. 16, 2017); (Tr. 1-5).

Here, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 30, 2014. *Id.* At Step Two, the ALJ determined that the Plaintiff has the following severe impairments: (1) congestive heart failure with pacemaker implantation; (2) history of aneurysm; (3) hypertension; (4) hypercholesterolemia; (5) dysfunction of the joints; (6) fibromyalgia; (7) obesity; (8) affective disorder; and (9) anxiety disorder. *Id.*

At Step Three, the ALJ concluded that, during the relevant time period between the alleged onset date of May 30, 2014, and April 26, 2017, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15). At Step Four, the ALJ found that between May 30, 2014 and April 26, 2017 ("the relevant time period"), Plaintiff possessed the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following modifications and

limitations:

> [Plaintiff is] limited to occasionally balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; occasionally pushing or pulling with the bilateral lower extremities; performing jobs on flat, level ground; avoiding concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, extreme cold, and extreme heat; avoiding moderate exposure to vibration; avoiding all exposure to workplace hazards, including magnetic fields; understanding, remembering, and carrying out simple, routine tasks, instructions, and procedures; sustaining attention, concentration, and pace for simple, routine task completion; never performing at a fast pace or high production rate; frequently interacting with coworkers and supervisors; occasionally interacting with the general public; and performing low stress jobs defined as having occasional decision-making and occasional changes in the work setting with advance notice of changes.

(Tr. 16-17). Based upon this RFC and relying partially on the testimony of a vocational expert who testified at the May 16, 2017 hearing, the ALJ concluded that during the relevant time period, Plaintiff was not able to perform any past relevant work. (Tr. 22-23). Therefore, the ALJ proceeded to Step Five.

At Step Five, the ALJ found that no jobs existed in the national economy that Plaintiff could perform after April 26, 2017. (Tr. 22-25). However, as to the relevant time period, the ALJ determined that other jobs did exist in significant numbers in the national economy that Plaintiff could have performed prior to April 26, 2017. *Id.* Thus, the ALJ found that Plaintiff's impairments became disabling on April 26, 2017, but prior to that date, Plaintiff was not under a disability, as defined in the Social Security Act. *Id.*

C.   **Analysis**

Plaintiff's dispositive motion presents a disorganized and often perfunctory analysis.[2] However, construing the dispositive motion liberally, it appears that Plaintiff's

---

[2] For example, Plaintiff argues that "[t]he ALJ's decision on the [disability] onset date violates SSR 83-20, which was in effect at the time of the ALJ's decision . . . and also violates SSR 18-1p, which has replaced SSR 83-20 but is consistent with it." (Doc. # 14-1 at 9). However,

5

central arguments are two-fold. First, Plaintiff appears to argue the ALJ's decision failed to accord proper weight to the opinions of Plaintiff's treating physicians in determining Plaintiff's disability-onset date. *See generally* (Doc. # 14-1). Second, Plaintiff appears to argue that the ALJ's disability-onset date is not supported by the record because the ALJ's decision "cherry-picks select portions of the record rather than doing a proper analysis of the evidence of record as a whole." *Id.* at 16. Plaintiff therefore points to contrary evidence in the record supporting his preferred onset date. *See generally* (Doc. # 14-1). The Court will address each construed argument in turn.

### 1. *Plaintiff failed to show that the ALJ violated the treating-physician rule.*

Plaintiff's most developed argument is that "[t]he ALJ's decision failed to accord proper and correct weight to the treating physician evidence, and improperly discounted the opinions of the treating physicians." (Doc. # 14 at 1). In support of his argument, Plaintiff points to a number of conclusive statements made by his treating physicians. First, Plaintiff points to the December 30, 2014 treatment notes of his primary-care

---

Plaintiff does not significantly develop this argument to explain how the ALJ's decision "violates" these regulations and how such alleged violation demonstrates he is entitled to the requested relief. Likewise, Plaintiff argues that the ALJ failed to mention that the vocational expert's "working experience is with VocWorks in Dublin, Ohio, which is approximately 132 miles and over two hours['] distance away from Mr. White's residence in Burlington, Kentucky." (Doc. # 14-1 at 15). However, Plaintiff fails to present any authority showing how the vocational expert's location is relevant—particularly when, as the Commissioner points out, "[t]he Commissioner is not required to show that job opportunities exist within the local economy" but rather whether Plaintiff can perform a significant number of jobs existing in the *national* economy. (Doc. # 18 at 13) (citing 20 C.F.R. §§ 404.1560(c)(2) and 404.1566(a); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999)). Plaintiff also refers vaguely to Plaintiff's "pre-hearing memorandum of 5/2/17 to the ALJ (Tr. 324-332), and his detailed memorandum of 10/26/17 to the Appeals Council (Tr. 189-219), for a detailed statement of facts, evidence, and the legal issues and errors involved in this case" and requests that the Court "[p]lease consider the contents, analysis, and arguments, and evidence and legal citations contained in those memoranda to be incorporated herein." (Doc. # 14-1 at 2). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

6

physician, Dr. Bradley Gray, which conclude that Plaintiff "is still considered totally disabled from all meaningful work" as well as statements from Dr. Gray's RFC report that Plaintiff's restrictions "would be work preclusive for all jobs in the national economy." (Doc. # 14-1 at 9) (citing Tr. 78-79, 755). Similarly, Plaintiff points to the RFC report and treatment narrative of Plaintiff's orthopedic surgeon, Dr. Michael A. Grefer, where Dr. Grefer concludes that Plaintiff "was forced to stop working on [June 1, 2014] and has remained totally disabled and under these same restrictions since that time." (Doc. # 14-1 at 9) (citing Tr. 1255-56). Plaintiff further points to April 3, 2015 treatment notes from psychologist Dr. Robert W. Noelker, concluding that Plaintiff was "permanently and totally disabled from any work setting." (Doc. # 14-1 at 9) (citing Tr. 805).

The ALJ, however, was not required to give controlling weight to any of these statements because they constitute an ultimate conclusion, not a medical opinion. *See* (Tr. 19-20) (identifying such opinions as conclusory). It is well-settled that an ALJ, in assessing medical evidence in a disability case, is required to give greater weight to the opinions of a treating physician than to those of non-treating physicians—the so-called "treating-physician rule" relied upon by Plaintiff. *See Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 474 (6th Cir. 2012) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)). This "treating-physician rule," however, only applies to *medical* opinions. *See Dunlap*, 509 F. App'x at 474-76. While a medical expert may opine "on issues such as whether [Plaintiff's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as Plaintiff's RFC or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues

7

is reserved to the Commissioner"). The Sixth Circuit has held that a treating physician's conclusion that a claimant is "unable to work" or "disabled" does not constitute a "medical opinion" under agency regulations. *See Dunlap*, 509 F. App'x at 474-76; *see also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (stating that "the ALJ is not bound by conclusory statements of doctors"). Because these conclusory statements by Plaintiff's treating physicians did not constitute "medical opinions," they were not entitled to controlling weight. Consequently, Plaintiff's argument on this ground fails, and the ALJ's decision is **affirmed**.

      **2.** ***Plaintiff failed to show that the ALJ's RFC determination was not supported by substantial evidence.***

Next, Plaintiff appears to argue that the ALJ's RFC determination—and attendant disability-onset date—is not supported by the record because the ALJ's decision "cherry-picks select portions of the record rather than doing a proper analysis of the evidence of record as a whole." *Id.* at 16. In support of his position, Plaintiff points to contrary evidence in the record supporting his preferred onset date. *See generally* (Doc. # 14-1). This contrary evidence includes (1) Plaintiff's records of hospitalization and emergency-room visits between May 30, 2014, and February 19, 2017; (2) "Mr. White's severe heart and psychological impairments also combining with his orthopedic impairments during the time period from 2014 through 2017;" and (3) Dr. Grefer's April 20, 2017 report, which Plaintiff claims was merely "a summary of the diagnoses, test results, and positive objective findings *he had already made* throughout his treatment in 2014 through 2017." (Doc. # 14-1 at 6-8, 13, 16) (emphasis added).

An argument that the ALJ cherry-picked evidence to reach a finding is "seldom successful," however, "because crediting it would require a court to re-weigh record

8

evidence." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014). That is not the role of this Court. The Court's review of the Commissioner's decision is limited to an inquiry into whether the Commissioner's findings are supported by substantial evidence, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). "When deciding . . . whether substantial evidence supports the ALJ's decision, [courts] do not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). When an ALJ examines the record as a whole and her decision is supported by substantial evidence, this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349.

Pursuant to this framework, Plaintiff's cherry-picking argument fails because the Court's review of the record confirms that the ALJ's decision is supported by substantial evidence. The ALJ reasonably relied upon physical examination findings that showed a lack of functional deficits prior to the at-issue onset date, as well as Plaintiff's course of treatment. *See* 20 C.F.R. § 404.1527(c)(3) and (c)(4). For instance, the ALJ noted the repeat clinical findings of a normal gait, the generally conservative treatment for the spine, joints, and fibromyalgia, and the stable condition following the implantation of Plaintiff's pacemaker. *See* (Tr. 19, 770, 903, 914, 929). As to Plaintiff's depression and anxiety treatment, the ALJ's decision is supported by a record showing overall conservative treatment of medication and therapy, and other care providers' examination findings

9

showing normal mood and affect. (Tr. 20) (citing Tr. 932-80).

Plaintiff makes several arguments in support of his claim that the ALJ's decision was not supported by substantial evidence. First, Plaintiff argues that the ALJ erred in setting the disability-onset date in 2017 because Plaintiff had been using a cane since 2014. Regardless of Plaintiff's subjective perception that he needed a cane, the ALJ noted evidence that the cane was not medically necessary prior to April 2017. (Tr. 18-22). Dr. Grefer prescribed Plaintiff a brace along with a cane in April 2017, following a worsening of his condition. (Tr. 1259). As the ALJ highlighted, the longitudinal record reflected multiple findings of a nonantalgic and normal gait by Dr. Grefer—in July 2015, January 2016, and November 2016—with the short exception in January 2015, when Dr. Grefer told Plaintiff to "[s]tay with his cane" during an episode of gout. (Tr. 18-19, 22, 597, 903, 914, 929). Courts have affirmed ALJ decisions where evidence showing a normal gait was considered in determining the medical necessity of a cane. *See Gum v. Comm'r of Soc. Sec.*, No. 5:17-CV-363, 2018 WL 1217141, at *5 (E.D. Ky. Mar. 3, 2018).

Plaintiff testified that he had been using a cane since 2014, but admitted that he did not receive a prescription for the cane; rather, he explained that he used the cane based on "just a discussion with Dr. [Bradley] Gray," his primary-care physician. (Tr. 64). The ALJ expressly recognized that Plaintiff said he had *used* a cane since 2014. (Tr. 22). However, Plaintiff was not *prescribed* a cane and brace until April 2017. (Tr. 1259). Use of a cane is not "medically necessary" such that it can be "considered a restriction or limitation on the plaintiff's ability to work" unless "the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane." *See Simpkins v. Comm'r of Soc. Sec.*, No. 5:17-CV-43, 2017 WL 3821684, at *3 (E.D. Ky. Aug. 31, 2017)

(citing *Murphy v. Astrue*, No. 2:11-CV-114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013)). In short, the ALJ reasonably considered the discrepancy between the testimony regarding the cane and the lack of medical documentation. *See Simpkins*, 2017 WL 3821684, at *3. Substantial evidence of record supports the ALJ's finding that the cane was not medically necessary prior to April 2017.

Next, Plaintiff argues that the ALJ erred in setting the disability-onset date in 2017 because Plaintiff testified his condition had remained the same since 2014. (Tr. 64). The ALJ expressly acknowledged this testimony, but found that Plaintiff's claim was not consistent with the longitudinal record, which instead showed a progression in Plaintiff's symptoms. (Tr. 21). For instance, the record shows that Plaintiff's back pain slowly worsened between June 2015 and April 2017. In June 2015, Plaintiff saw Dr. Grefer for back pain. (Tr. 594). Treatment notes indicate Plaintiff reported he had fallen on ice in January and his symptoms had continually progressed and worsened since then. (Tr. 594). X-rays showed degenerative changes but nothing acute, and Dr. Grefer advised Plaintiff to perform activities as tolerated. (Tr. 595). When Plaintiff returned to see Dr. Grefer six months later in December 2015, Plaintiff reported that his back pain was getting worse. (Tr. 911). In July 2016, Plaintiff again reported a progression of symptoms—he said he started to have "catching" in his back between April and July 2016. (Tr. 919). In August 2016, Plaintiff's condition worsened again when he pulled his back while moving things and was assessed as having an acute lumbar strain and sprain. (Tr. 926). Finally, in April 2017, Plaintiff had worsening radiating pain from his low back down both of his legs, and, as noted *supra*, Dr. Grefer prescribed an adjustable cane and a brace to treat Plaintiff's lumbar strain. (Tr. 1250, 1259).

Additionally, the record indicates that Plaintiff's depression and anxiety—attendant to Plaintiff's loss of physical functioning associated with multiple medical conditions—progressed as his physical symptoms worsened. (Tr. 805-07, 888). The June 2016 treatment notes of psychologist Dr. Robert W. Noelker indicate that Plaintiff's stressors had increased to the point he was having increased mental symptoms. (Tr. 888, 890, 894). The record supports a finding that, as Plaintiff's physical ability to perform the activities of daily living became more restricted, he had increased mental symptoms. (Tr. 893). In light of the evidence of the progression of Plaintiff's conditions between 2014 and 2017, the ALJ's disability-onset finding is reasonable. *See* SSR 83-20, 1983 WL 31249, at *2-3 (Jan. 1, 1983). The ALJ's determination that Plaintiff's condition had not remained the same, therefore, is supported by substantial evidence.

Furthermore, in addition to the change in Plaintiff's RFC, the ALJ also found that the change in Plaintiff's age category was a factor in determining the disability-onset date. (Tr. 23-24). In cases with slowly progressive impairments, "consideration of vocational factors can contribute to the determination of when the disability began." SSR 83-20, 1983 WL 31249, at *2. Here, the ALJ explained that, as of April 2017, Plaintiff's age category progressed from that of a "younger person" to a person "closely approaching advanced age." (Tr. 23). *See* 20 C.F.R. § 404.1563(d) (stating that a person between the ages of 50 and 54 is closely approaching advanced age). This impacts Plaintiff's status under the applicable Grid Rules and supported the ALJ's ultimate conclusion. *See, e.g.*, 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 2, Grid Rules 201.21 and 201.14.

Plaintiff further attempts to argue that the ALJ's RFC determination—and attendant disability-onset date—is not supported by the record by pointing out that the non-

examining, state-agency medical consultants completed assessments prior to submission of many hundreds of pages of medical evidence. (Doc. # 14-1 at 12) ("[T]his attorney submitted approximately 578 pages of additional evidence since the reconsideration stage."). However, Plaintiff failed to supply any significant, specific examples of discordance between the opinion of the medical consultants and the subsequent records to which he vaguely alludes. Moreover, Plaintiff has wholly failed to demonstrate how the subsequent records alter the ALJ's analysis. As noted *supra*, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Elder*, 90 F.3d at 1118.

In sum, Plaintiff may disagree with the ALJ's conclusion; however, even if substantial evidence exists to support Plaintiff's claim, it is improper for the Court to simply re-weigh the evidence and disturb the Commissioner's conclusion. *Cutlip*, 25 F.3d at 286; *DeLong*, 748 F.3d at 726. All that is required of the ALJ is that she render a decision that is supported by substantial evidence. *Listenbee*, 846 F.2d at 349. The ALJ has done so here. While the ALJ weighed the evidence contrary to how Plaintiff preferred, the Court finds no error. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 436 (6th Cir. 2013). Consequently, Plaintiff's argument fails and the ALJ's decision is **affirmed**.

### III. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 14) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 18) is hereby

**GRANTED**;

(4) This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 25th day of June, 2019.

Signed By:
*David L. Bunning*
United States District Judge

J:\DATA\Social Security\MOOs\Covington\18-76 White MOO.docx